Good morning and may it please the court Matthew Bergman appearing on behalf of the Stephens family with me at council tables is Ms. Ruby Alamant. I would like to reserve five minutes for rebuttal. Under Oregon law in a toxic tort case a plaintiff is entitled to rely upon circumstantial evidence in establishing the fundamental issues of causation and exposure. Oregon Supreme Court has recognized that in reaching this determination expert testimony is almost always required in that in the words of the organ of the Idaho Supreme Court judges should afford substantial deference to a qualified expert selection of the facts on which he bases his opinion and avoid second-guessing the facts on which the expert chose to rely. In this case it is very clear that the district court relied solely on the direct evidence set forth in Mr. Stephens testimony and did not consider the circumstantial evidence consisting of Union Pacific's corporate admissions and documents and the expert testimony submitted in this case. We would agree that standing alone Mr. Stephens testimony that he observed insulation being removed in his father's proximity from locomotives would not be sufficient to establish a fact issue on exposure or causation but read in conjunction with and connecting the dots to the other reached. Particularly Union Pacific admitted that the locomotives that were repaired at the Weiser facility were insulated with asbestos. Union Pacific admitted that insulation would be repaired and replaced in the course of regular and anticipated maintenance and finally that this activity would create dust. So viewed in the context of Mr. Stephens testimony that he observed insulation work going on that establishes a fact issue that asbestos products were actually being used. Now combine that with the expert testimony of Dr. Longo that in the two-stall garage or facility that the work was going on, the roundhouse, anybody in the work area would have been exposed within 276 feet. Dr. Longo established through his expert testimony which was not which is before the court that this that whether or not Mr. Rowley Stephens actually worked with the material being present in the work environment would have contaminated his clothes and furthermore the that that the home environment would have been contaminated. Dr. Longo referred to this as chronic. Counsel can I ask you about that because it both both Dr. Longo and and your other expert Dr. Church yes predicated their analysis on an assumption about the frequency of exposure and I don't know where where you got that the frequency well I mean there was I believe there was a reference to sort of daily exposure to the dust and I'm wondering what is there in Mr. Stephens testimony or any of the admissions from UP that you're referring to. Well as the court held in Earl we need to connect the dots here and the dots consist of Mr. Stephens testimony that insulation work was performed that his father came home daily with dusty work clothes and you combine that with Union Pacific's admission that the products can that the locomotives contained asbestos and that this was a key document routine maintenance of that of that locomotive involved disturbance of insulation and finally Dr. Longo's testimony that the entire work area that would have been contaminated and so in terms of frequency your honor we have 40 hours a week for for 10 years. I mean there are a lot of activities that produce dust that don't necessarily involve insulation or I'm not sure how you get from the testimony of somebody who was a child at the time right saying that you know his father was sometimes dusty to the conclusion that work with asbestos containing dust was a daily occurrence. Yes and I don't believe the record would support a daily occurrence your honor to be candid with you but I believe it can be reasonably inferred that a regular that regular work with asbestos was encompassed within the maintenance work performed in the Weiser facility and moreover based upon Dr. Longo's testimony whether or not the work was actually performed on a daily basis and I don't think the record supports that the the work environment was contaminated and just through the process of re-entrainment which Dr. Longo described asbestos being relofted into the atmosphere it would have resulted in contamination. It is a the dots are there particularly in light of the deference that Idaho courts require be paid to the experts essentially selection of facts. Can you can you tell me what what specifically in the record you're referring to on in terms of Union Pacific's admissions because I read what I thought that the pages you cited in the brief and they were trying they were yet carefully avoiding saying that they it sounded like they really didn't know what work was done there. Well they didn't have specific knowledge on Weiser yes your your honor that is manifestly correct but exit of record 339 to 41 is an admission by their 30 B6 designee that that the locomotives were insulated with asbestos and that removal and replacement of that installation was a routine was a routine activity at UP maintenance facilities. Furthermore ER 419 they admitted that this activity would have created dust and so as a result your honor I think we have evidence that admissions from Union Pacific that their locomotives had prodigious amount of dust. Moreover your honor just looking at the at the demonstratives that Mr. Stevens testified were representative of what he saw one can just look at those huge locomotives that's in the actual briefs you know encased in asbestos. You're talking about the photographs? I am your honor yes which were conceitedly not taken of Weiser but which the evidence supported the conclusion that they were representative of what he saw. This is I think an example where and in there there is a paucity of direct asbestos appellate authority in Idaho but the Washington Supreme Court's decision in Lockwood which I know Judge Rothstein is familiar with and in essentially what we have I believe is a similar situation as was presented to the Washington Supreme Court in Lockwood. Albert Lockwood had no you know we worked in the hold of the USS George Washington having no idea what asbestos was we used or whether it even was asbestos but what the court the Washington Supreme Court held in Lockwood was that a plaintiff can rely on other evidence to establish that key factor other evidence and you know other evidence and that's exactly what we have here there is no question that Mr. Stevens does not have personal knowledge direct knowledge but the evidence here your honors is if you look at the court's opinion it does not appear that the court granted any attention or any weight whatsoever to the Union Pacific documents both the corporate admission testimony and their repair specification that said you've got to replace installation as part of this process completely ignored that as well as completely ignored the expert testimony which under Idaho law needs to be given substantial deference to. At the risk of taking you away from the argument that you're making I'd like to raise the question of foreseeability and where that stands how you see where that stands in the record now. Well I think where you know they this court should it choose to do so could affirm on alternative grounds the trial court found that foreseeability was a question of fact now. Where do you see that? It's in the courts in the oral argument transcript. Where in the oral argument transcript do you find a finding by the question of fact? I will my comment yeah there was a look for it it was it was a statement from the bench in the course of the of the oral argument. There was a question from the bench in the course of oral argument but I I would like to see where you find a statement from the bench that it was in fact a question of fact. I will I will come back to you on my rebuttal time with that but on the substance yeah on the substance what do you do about Hoyt? Well first of all the what what what you do about Hoyt is first of all it's not it's obviously not authoritative and the record before the court is authoritative it is not controlling I'm sorry judge the record before Hoyt was a very very limited record that did not contain the factual evidence that was put forward before the district court here regarding foreseeability in particular and remember that Union Pacific has acknowledged that a duty is owed the the scope of the duty is essentially the scope of the duty is determined by foreseeability what was not in the record in Hoyt was the extensive analysis over the course of a hundred years of medical and industrial hygiene literature regarding the knowledge and let me just be very very brief you know you had two strains of knowledge none of this which was in the record in Hoyt starting with Tallman in 1913 a recognition that in the industrial hygiene literature segregation of work clothes and in in street clothes was good industrial hygiene policy and you and you also have established unlike in Hoyt for the 1935 on Union Pacific was a member of the American Association of Railroads its personal physician or its its company physician attended meetings discussing asbestos hazards moving forward you have the Alton Railroad which was a subsidiary of Union Pacific in the 1940s utilizing very extensive safety measures and with the specific issue your honor and I think this is where you're going on respect to take home exposure risks you have to to kind of clarion calls if you would as to when it became known or knowable and let me just you know interject that under principle that only the general risk of harm need to be foreseen not the specific mechanism of injury so with that preface in mind I within within in within industry the key data is 1942 when the Pennsylvania Department of Labor reported on General Electric's utilization of industrial hygiene mechanisms basically lockers and change rooms and then in 1949 the National Institute of Health finding a asbestos is a carcinogen and be you prevent it by having segregated work clothes and just like in Hoyt the experts here agreed there were no published studies about this kind of derivative harm from clothing and dust take home harm right respectfully your honor no that's not what's in mr. template what is true is that the first published literature regarding the connection of take-home asbestos or secondary asbestos and mesothelioma was 1960 the Wagner study but the 1949 study the Hooper study by the National Cancer Institute specifically referenced referenced cancer lung cancer in general and and again under Idaho law it is the question is the general field of danger and it was very you know the evidence that was put forward and there was no evidence on the other side but the evidence that was put forward in this case was that through its involvement in the American Association of Railroads Union Pacific was you know had every opportunity to be aware that asbestos was being used prominently in its repair facilities and knew about the basic industrial hygiene measures to protect workers from that and in that that that that is that is established in the record moreover you have this extensive body of literature going on you know starting in 1913 and in going through the 40s and 50s recognizing that not only are workers exposed to toxic dust at risk but their families are exposed and that the way you protect them is to have separate lockers and separate change rooms so you segregate work clothes and street clothes there's no evidence this was done here well if you're taking the position that the trial court has already ruled on this and found it a dispute of fact so you're not asking us to do so to rule on this at all or are you well judge I it was an alternative ground on which you know the court could find with us on the causation issue and in a firm an alternative ground so I am essentially suggesting that the court declined to do so that the evidence before this record would allow a reasonable trier of fact to conclude that it was foreseeable and again foreseeability under Idaho law is always a question of fact in in less reasonable minds could only reach one thing I believe the record we put forward before this court and before the district court would allow reasonable minds to conclude that the general field of danger of take-home asbestos exposure was knowable to Union Pacific in the 40s and 50s thank you I'll reserve the rest of my time very good okay let's hear from Council for Union Pacific good morning Steve crane for Union Pacific Railroad Company I'd like to focus my comments on the actual evidence on the two key issues that we think are dispositive of this appeal one is exposure and two substantial factor let me start with exposure which itself has two parts one the father's exposure and two then exposure to the plaintiff from the father's exposure so what is the actual evidence on the father's exposure there is no evidence that the father worked or cut insulation himself there is no evidence that the father worked around anyone else who cut insulation or what his proximity was to any work on insulation by others could just pause there the first part of that there's no evidence that he worked around others who were cutting insulation correct I thought the plaintiff's testimony here was that he he went to this father's I guess he was watching his father as well but he saw people doing that no no that's not the testimony and I'll get to that in just a second because I want to pick up through a logical progression of this but I don't think that's the actual testimony there's no evidence of what the operation was conducted as to insulation how it was conducted how often it was conducted there's simply an on that the totality of the evidence and this gets to your honors question the totality of the evidence with respect to operations regarding insulation was that the plaintiff recalls when he was somewhere between six and eight years old once seeing insulation being removed and replaced that's it okay so why that I guess why doesn't that testimony alone counter the first part of that statement I pause you on because there's no evidence of what that removal or replacement entailed and where the plaintiff's father was in relation to that what we do know from affirmative testimony from Union Pacific's person most knowledgeable deponent was that the only time asbestos might and I emphasize might be disturbed is in a major overhaul situation and even in that circumstance it depends on how the worker did the work on whether the lagging which may have contained asbestos was disturbed to the point the asbestos fibers were released but that's all speculation we don't know for example when the plaintiff observed work on insulation the one time he was there whether that was a major overhaul and that's the problem with counsel's argument this morning that there was this repair work constantly going on and that that somehow creates asbestos dust that's not the testimony the actual testimony is only a major overhaul might depending on the circumstances result in asbestos being disturbed but there's no evidence that it was a major overhaul at that time so the totality of the evidence as to the father's exposure is simply an absence of evidence and speculation that the father himself took home asbestos on his clothing without that premise the plaintiff's argument and contention that he was then exposed while his mother did laundry has no foundation but let's assume some exposure to the father which is speculation there's no evidence of how often the plaintiff was on the porch where the laundry was done and there's no evidence of his proximity to where the laundry was being done and even speculating that the one time the the operation on the insulation and even assuming the father was in sufficient proximity and even assuming the insulation was cut and disturbed there's no evidence that that event on that day was the same day that the plaintiff was at home on the porch while his mother was doing the laundry yes but I think the the inference the plaintiff is saying a jury could draw here is that the insulation removal and replacement work that he observed on that one occasion was a regular part of what went on at that facility and that his dad worked there for what was it 10 years or something and that's just not true that's not what the record says what does the record say on that the record says that only in a major overhaul situation and I think the the citation to that is er 417 the only evidence is that it is in a major overhaul situation that asbestos might be disturbed and it depends on how the operation was evidence the evidence is not as plaintiff suggests that there was constant repair work going all the time that in fact disturbed the asbestos there's no evidence to that so remind me then the the experts testimony as to causation well you're going to get to that I assume because because what I'm trying to remember is the expert says you know you know I think that the whatever this exposure this sort of secondary exposure that the plaintiff suffered would have been enough to constitute a substantial factor but I can't remember what was the factual premise that well there was that there was an assumption that was the assumption the assumption was that he was constantly exposed and that's the problem and that's the the baton was never passed to the expert the experts as all your honors know their opinions are only as good as the factual basis for the opinions right and there was no factual basis for the experts opinions that assuming he was constantly exposed so just help me with that sure the expert was asked to assume or did assume that the father was exposed on a daily basis to regularly I think yeah I think that was his or some word like that was his assumption and of course the other problem with the expert testimony was dr. church said well he would need and I'm about to get into this second topic which is the substantial factor issue that he would need industrial hygiene testimony to talk about intensity proximity duration things like that in order to come to his segue into substantial factor even speculating that there was exposure to the father and even speculating that the plaintiff then picked up that exposure on the porch while his mother did the laundry I think that was the the expert they had an expert who said that it wasn't just going to be exposure on the shirt and so the whole house basically would have been contaminated no I think he was he said that his testimony was that assuming the father traipsed through the house and disturbed the assumed fibers on the clothing that might be the case but the actual testimony is that the father went to the porch and deposited his clothes on the porch coveralls but he had the shirt he would he would have been wearing I think he kept on in the house there's no testimony that somehow the fibers these mythical fibers that didn't happen anyway got from the overalls into the shirt I thought they were overall so that the shirt the point I think the point you're you're making your honor is that all of this is speculation and inferences can only be drawn if they're reasonable inferences and if the inference is more likely than not and we don't have enough evidence in the record to draw an inference more likely than not for example of what you're just suggesting but getting back to exposure is not enough there has to be evidence of and without speculation that the exposure was a substantial factor meaning exposure amount and duration intensity proximity things like that and there's zero evidence in the record as to duration proximity and intensity of the exposure to the father well let alone what you're calling speculation is often what we would call dispute a fact because we don't know and we don't know what conclusions a jury would reach if the version that I thought we had from the record was that the father came home covered in dust took off the overalls they were washed on the porch but walked through the house with his shirt on covered with dust you know would that be sufficient sufficient to show duration and proximity but sufficient to at least get to the jury with the question of whether this was adequate proximity and duration do you see what I mean I'm distinguishing between what you're calling speculation and whether there is sufficiency for the jury to make that and and that's why I was talking about an inference because the record is extremely limited and actually doesn't support the hypothetical that you propose there is no actual testimony that the husband or the father rather whatever the dust was and we don't know that it was asbestos dust that's the first speculative inference you have to get over but whatever the dust was that he traipsed through the house there's no evidence of that the only evidence is from the plaintiff that the father deposited the clothing on the porch and he may or may not have been there more than once we don't know he didn't he is absolutely a distinction in the law between circumstantial evidence and enough to get to a jury but in this record we are on the other side of the line where inferences cannot be drawn more likely than not based on the evidence in the record and the exposure itself as I started to say even if you and it was actually asbestos exposure zero evidence in the record on the Sun's proximity intensity duration etc which would allow the trier of fact beyond speculation to find a substantial factor in particularly emphasizing the McIndoe case in that regard I was actually just going to ask you to address the McIndoe case because of course that's a applying federal common law what would the standard be under Idaho law well my understanding is that Idaho law employs a substantial factor test but it hasn't been particularly articulated in the context of an asbestos case but I would say that the McIndoe standard which although it was under maritime law is applicable here because negligent standards applied and the McIndoe court clearly articulated the substantial factor approach in an asbestos liability setting and as your honor knows that in the McIndoe case the actual evidence of actual exposure was hugely greater than it is on this record and even in that context the McIndoe court said it's not enough because of the absence of information on proximity duration intensity I know I'm running out of time but quickly your honor did raise the alone and I would simply point the court to the Henry case where it says whether a party owed a general duty of care with respect to a particular injury will depend on whether or not that injury was a foreseeable result of the party's action and in this case we're talking about the injury of mesothelioma and as your honors have noted and as the plaintiffs have conceded or appellants have conceded there is no evidence that before 1960 there were any studies connecting take-home exposure with mesothelioma so under the Henry standard we think as a matter of law there can't be a finding of foreseeability unless your honors have any questions. Thank you very much. Let's put two minutes on the clock for rebuttal. You ate far into your five minutes so but we'll give you a couple. Judge Rothstein, ER 2829 is the reference it was a statement from the court on the bench that it was an issue of fact as I understood it. In the Hoyt case none of the industrial hygiene literature that I talked to the court was before Judge Zille in Hoyt. There have been some fast and loose statements with the record. It wasn't one time. It was multiple times that he was there. The evidence supports the statement that and I mean Mr. Stevens testimony is pretty succinct. I would commend it to the court simply stating that that his father's shirt was dusty and he was around during that time. What about the regularity of the asbestos removal work? Well the regularity the inference is in the record does not support the statement that it was only major overhauls by the corporate representative. Yeah I mean the the evidence was that this we have the the specification from Union Pacific regarding the use of asbestos in the course of maintenance. Regularity that the act hang on I just let me ask my question please. Thank you John. I'm just trying to give you a chance to respond. I appreciate that. The regularity of the client witnessed right the I guess you know removal of asbestos because that that is I mean if we do have evidence that asbestos was in the installation so if that activity was a regular occurrence at your client's father's workplace it seems to me you've got obviously a something to work with but I think your opponent is right that if you can't establish that that was something that happened with some frequency then the chain of inferences becomes a lot more speculative. I agree with that. What do we have specifically? Sure so yeah and in what we have is you know he saw it a half dozen times that that would not I would concede be regularity but I believe it supports an inference in conjunction with Union Pacific's corporate representative statement that insulation removal was part of regular maintenance to support the inference. What do you have on your side for that? Yeah. Your opponent says that no all we that activity occurred. And I would simply commend the court to the record the record would ER 339 to 41, ER 303 to 04, and ER 416 to 4 to and then ER 478 to 80. Okay. With respect to the intensity of exposure and let's just be clear there was no effort to exclude the experts. There was no evidence there was no indication that the district court looked to the expert testimony which under Idaho law should have been deferred to. Finally Dr. Chirg's statement regarding the industrial hygienist only related to exposure that that took that Mr. Stevens would have personally sustained in the roundhouse not in the home. Dr. Chirg found that that was a substantial factor and Dr. Longo found that was chronic. And again under Idaho law experts conclusions drawn from the facts should be deferred to. There's no evidence that either the Union Pacific evidence or the experts were looked to by the district court in rendering judgment here. Thank you. Thank you very much counsel. Case just argued is submitted.
judges: Watford, Miller, Rothstein